[No. 26304.   Department One.   January 8, 1937.]

N. H. BRACY, *Respondent*, v. UNITED RETAIL
MERCHANTS, *Appellant*.[1]

[1]Reported in 63 P. (2d) 491.

*Brown & Weller,* for appellant.

*Gleeson & Gleeson,* for respondent.

GERAGHTY, J.—In this action, the plaintiff, doing business as the Bracy Transport Company, sued the defendant for damages for the alleged breach of a written contract. The defendant was a corporation, with its principal place of business in the city of Spokane, and was engaged in the buying of merchandise collectively for a large number of associated stores.

The amended complaint alleged the execution of a written contract by the plaintiff and defendant on February 7, 1935. A copy of the contract is attached to the complaint as an exhibit. In it, the defendant agreed to furnish to the plaintiff freight to be hauled from Seattle and Tacoma to Spokane. The defendant agreed to furnish to the plaintiff such an amount of freight as the ordinary requirements of its business might demand, with the condition that the amount would in no event be less than one hundred tons a month. The plaintiff was to be paid for the service at the price of ten dollars per ton, or fifty cents per hundredweight. After stipulations respecting the character of service, the contract provided:

"It is further mutually agreed between the parties that this contract shall be in force and effect for a period of TWELVE (12) months, from the day and date of beginning of operations, same being considered

the day and date upon which the Washington Department of Public Works grants permit for such operations.

"It is further mutually agreed between the parties that this contract, is at all times subject to the rules and regulations and approval of the Department of Public Works of the State of Washington."

The amended complaint further alleged that, following the execution of the contract, and in order to comply with its terms, the plaintiff made application to the department of public works of the state of Washington for a permit to operate as a contract hauler, paid the department all necessary fees required by law, and filed with the department the required liability and property damage insurance and a copy of the contract, all in compliance with the law and the rules and regulations of the department; that no rate schedule was filed with the department, as the rates to be charged were set out in the contract; that the plaintiff was advised by the department that he had

". . . so complied and had qualified for and could and would receive a temporary permit with a final permit to follow on the filing of the rate schedule."

That thereafter, when the plaintiff notified the defendant of the existing status of his application for a contract hauler permit, the defendant repudiated the contract and notified plaintiff that it would not comply with its terms, and would give him no freight for transportation as therein provided; and that, following this notification by the defendant, the plaintiff proceeded no further with his application for a permit, as his application was based entirely on the contract with defendant. It was also alleged that the amount of freight which would have been hauled by plaintiff had the contract been carried out, would have

been about fifteen hundred tons, yielding a net profit to him of ten thousand dollars, for which amount he sought judgment.

The defendant denied the execution by it of the alleged contract, and, by way of an affirmative defense, alleged:

"That if plaintiff has anything purporting to be a contract and signed by this defendant, the same was obtained by plaintiff from defendant by chicanery on the part of plaintiff and by reason of false and fraudulent representations on the part of plaintiff, which induced defendant to sign; . . ."

The case was tried to a jury, which returned a verdict in favor of the plaintiff for the sum of fifteen hundred dollars. After the denial of motions for judgment notwithstanding the verdict and, in the alternative, for a new trial, judgment was entered upon the verdict. The defendant appeals.

The principal contention made by the appellant is that the performance of the contract on the part of respondent required a permit from the department of public works, that this permit was not secured, and that, therefore, the respondent was not qualified to do appellant's hauling even if it had been tendered to him. The respondent alleged in his complaint, and at the trial introduced evidence tending to show, that he had so far complied with the requirements of the department that nothing but a formality remained before the issuance of a permit; and that, before this formality could be complied with in due course, he was notified definitely by the appellant that it repudiated the contract and would give him no freight to haul.

It is to be borne in mind that, under the statute, a contract hauler is not a common carrier, qualified in advance and under legal duty to the public to trans-

port freight as offered. Chapter 166, Laws of 1933, p. 613, as amended by chapter 55, Laws of 1933, Ex. Ses., p. 138, contains regulations governing the business of contract haulers. Section 1 of the act (Laws of 1933, Ex. Ses., p. 138) defines the term *contract hauler* as meaning

". . . every person owning, controlling, operating or managing any motor vehicle used in the business of transporting property for compensation, other than as a certified freight carrier, over any public highway between fixed termini or over a regular route, . . ."

Section 2 of the act (Laws of 1933, p. 615) provides that

"No person, except he be a certificated operator, shall engage in the business of transporting property by motor vehicle for compensation over any public highway between fixed termini or over a regular route, unless such person *prior to engaging in such business make a written contract or contracts* with all persons for whom such transportation is to be furnished clearly stating the agreed compensation for such transportation, and prior to engaging in such business shall *file* such contract or contracts with the department." (Italics ours.)

Section 4 (Laws of 1933, p. 616) also prohibits operation by a contract hauler without a permit, and requires the application for permit to have attached thereto the original or duly verified copies of all contracts to furnish transportation. So it would seem to be the policy of the law not to grant permits except to persons having existing contracts for hauling. In other words, it is necessary to have the contract before making application for the permit, because the permit authorizes hauling only in accordance with the contract.

It will thus be seen that it was a necessary pre-

requisite to the issuance of a permit to the respondent that he obtain and file with the department a contract for the hauling to be covered. If, as the respondent contends, his application, pending before the department, had so far progressed that in a short time a permit would have issued to him had not appellant repudiated the contract, then the appellant cannot escape liability by failure of respondent to prosecute his application further. The contract, by its terms, recognized the necessity for application to the department, and the parties must have had in contemplation the necessary steps and incidental delays involved in securing the permit.

The respondent introduced in evidence, as an exhibit, a transcript of the hearing upon his application before the department. This transcript would seem to sustain his contention that the department was ready to grant his permit. At that hearing, it developed that the respondent had negotiated another contract with an oil company, and a formal agreement had been prepared and sent to the company's office for execution. He desired to have this contract also covered by the permit. It was suggested to him by Supervisor of Transportation Lane, conducting the hearing, that the matter could be continued for a few days and respondent would thereby save an additional filing fee of five dollars on the second contract. To this suggestion the respondent agreed, and the application was taken under advisement.

Appellant assigns error on the admission of this exhibit in evidence. The document was certified by the secretary of the department of public service (formerly the department of public works) as a true and correct copy of the original transcript of the hearing before the department. It is material, as we have seen, for the purpose of showing the status

of respondent's application at the time he was notified by appellant of its repudiation of the contract.

The appellant also assigns error on the refusal of the court to give its proposed instruction No. 8, as follows:

"The court instructs you that lost profits or net earnings are recoverable only where the evidence can fix the loss of profits or net earnings as certain and definite and where it is not open to speculation and conjecture.

"You are further instructed that in this case there is no such evidence on the part of the plaintiff; and in the event that you find for the plaintiff, you shall assess his damages in a sum of not to exceed $1.00."

This instruction, if given in its entirety, would have been, in effect, a direction to the jury to return a verdict for nominal damages. The court did not err in its refusal to give the instruction.

Instruction No. 7, given by the court, advised the jury that, if they found the plaintiff entitled to recover, they should allow him such sum as damages as would constitute the net profit on his operation. By net profit, they were told, is meant such profit, if any, as is left after all costs of operation have been deducted; in this case being the difference between the costs as shown by a fair preponderance of the evidence and the contract price for freight which they believed from the evidence the defendant would have transported and hauled from Seattle and Tacoma to Spokane during the year covered by the contract. The jury were further advised by this instruction that, in ascertaining the net profit, they were to take into account, and offset against any amount found due the plaintiff, such wages or earnings from all other sources as he had made subsequent to the alleged breach of the contract; and that, if they found the plaintiff was entitled to recover, but had failed

to establish by a fair preponderance of the evidence that he would have made any net profit, then they should return a verdict for the plaintiff for nominal damages only. This instruction was not excepted to by the appellant and became the law of the case for determining the measure of damages, if any, found due the respondent.

The judgment is affirmed.

MILLARD, C. J., MAIN, BLAKE, and STEINERT, JJ., concur.

